UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

LUIS ZURITA,

                 Plaintiff,

     - against -                   <u>REPORT AND</u>
                                       <u>RECOMMENDATION</u>

BERGEN PIZZA INCORPORATED, AND
CONSTANTINO MOYAO RODRIGUEZ, and      CV 2012-3874 (KAM)(MDG)
any other entities affiliated with or
controlled by BERGEN PIZZA
INCORPORATED and/or CONSTANTINO MOYAO
RODRIGUEZ,

                 Defendants.

- - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiff Luis Zurita seeks recovery of unpaid minimum and overtime wages from defendants Bergen Pizza Incorporated ("Bergen Pizza") and Constantino Moyao Rodriguez under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, as well as pendent state claims under the New York Labor Law ("Labor Law"), N.Y. Lab. Law, Art. 19 §§ 650 <u>et seq</u>.  After the Honorable Kiyo A. Matsumoto adopted my report and recommendation that the answers of defendants be stricken and default be entered against them (ct. doc. 29), Judge Matusumoto referred to me plaintiff's motion for default judgment.

<u>BACKGROUND</u>

     The facts pertinent to this decision are undisputed and are set forth in plaintiff's complaint ("Compl.") (ct. doc. 1).

Bergen Pizza operates a restaurant located in Brooklyn, New York.  Compl. at ¶ 13.  Mr. Constantino Moyao Rodriguez owned and operated the restaurant during the period relevant to this action, and supervised its employees.  Id. at ¶¶ 13-14, 18.

Plaintiff worked for defendants as a cook and food preparer from January 2010 to May 2011.  Id. at ¶¶ 16, 17.  Plaintiff alleges that although he typically worked seven days per week for 12-17 hours per day for a weekly salary of $350, defendants failed to pay him minimum wages, overtime wages or a spread of hours premium in violation of the FLSA and the New York Labor Law.  Id. at ¶¶ 17, 29, 33, 46, 53, 59.

As discussed in this Court's March 5, 2015 report and recommendation (ct. doc. 28), defendants were initially represented by counsel, but counsel later moved for leave to withdraw, which this Court granted on May 21, 2013.  See minute entry dated 5/21/2013; ct. doc. 16 (motion to withdraw).  In the order granting leave to withdraw, this Court advised Mr. Rodriguez that he could proceed pro se, but Bergen Pizza, a corporation, could not appear in federal court, except through counsel.  See order dated 5/21/2013 (ct. doc. 17) at 2-3.  When neither defendant appeared at the next scheduled conference on July 25, 2013, this Court warned defendants that they were required to appear at scheduled conferences and, if they failed to do so, they could be subject to sanctions, including entry of default judgment.  See order dated July 25, 2013 (ct. doc. 18).  Mr. Rodriguez participated in a telephone conference held on

August 7, 2013, during which the parties advised the Court that they would meet the following week to discuss settlement.  See minute entry dated 8/7/2013.  This Court warned that if a settlement was not reached, the failure of Bergen Pizza to obtain counsel could result in the entry of default judgment against it. See id.

By letter dated August 22, 2013, plaintiff's counsel advised that the parties executed a settlement agreement requiring defendants to pay $13,000 in thirteen equal monthly installments of $1,000 on the first business day of each month.  Ct. doc. 19. However, in a status report plaintiff filed on September 27, 2013, he advised that defendants failed to make the first payment required under the settlement agreement.  Ct. doc. 20.  This Court scheduled a status conference for October 18, 2013, but defendants did not appear.  See ct. doc. 22; minute entry dated 10/18/2013.  The Court issued a further order setting a conference and warned defendants again that their failure to appear for any scheduled conferences could result in sanctions and ultimately the striking of their answers and the entry of default judgment against them.  See ct. doc. 23.

Mr. Rodriguez failed to appear in Court at the next scheduled conference held on November 15, 2013, but was reached by telephone.  See minute entry dated 11/15/2013.  He explained that although he had received notice of the conference, he was too busy to participate, but would be willing to appear for the next conference.  Id.

-3-

Mr. Rodriguez participated by telephone for the next three conferences held.  See minute entries dated 12/10/2013, 2/6/2014, and 5/6/2014.  At a scheduled conference held on July 2, 2014, plaintiff's counsel advised that Mr. Rodriguez had called to say he would not be able to participate, but intended to pay the remainder of the settlement payments after an imminent sale of his business.  See minute entry dated 7/3/2014.  The Court directed that the parties file a report on the status of settlement by July 31, 2014 and that if the settlement was not close to completion, this Court would recommend default judgment be entered against the corporate defendant.  Id.

In a status report filed on July 31, 2014, Leonor Coyle, plaintiff's counsel, stated that defendants had made no further payments under the settlement agreement since sending the seventh installment payment for March 2014.  Ct. doc. 24.  She said plaintiff notified defendants that they had breached the settlement agreement by letter sent via first class mail on July 15, 2014, but defendants did not respond.  Id.  She further stated that she and other lawyers in her firm had attempted to call Mr. Rodriguez, but his telephone number had been disconnected.  Id.  Plaintiff then requested that this Court recommend that default judgment be entered against defendants. Id.

This Court scheduled a conference for December 9, 2014 and warned Mr. Rodriguez that he must appear at the conference in-person or through counsel and that his failure to appear will

result in default judgment being entered against him.  See ct.
doc. 27.  Despite this warning, Mr. Rodriguez did not appear at
the December 9 conference.  See minute entry dated 12/9/2014.
Ms. Coyle also advised that letters sent to Mr. Rodriguez had
been returned.  Id.

As of this date, no attorney has entered a notice of
appearance on behalf of the corporate defendant, Bergen Pizza.
Neither defendant has filed any submission or otherwise
communicated with the Court since May 6, 2014.

DISCUSSION

I.  Default Judgment Standard

A default constitutes an admission of all well-pleaded
factual allegations in the complaint, except for those relating
to damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty
Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v.
Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see City of N.Y. v.
Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).
However, the district court is "required to determine whether the
[plaintiff's] allegations establish [defendant's] liability as a
matter of law."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir.
2009).  A default also effectively constitutes an admission that
damages were proximately caused by the defaulting party's
conduct; that is, the acts pleaded in a complaint violated the
laws upon which a claim is based and caused injuries as alleged.
See Greyhound, 973 F.2d at 159.

-5-

The court must ensure that there is a reasonable basis for the damages specified in a default judgment.  This Court did not conduct a hearing to determine plaintiff's damages.  The Second Circuit has made clear that a hearing to determine the amount of damages with regard to a default judgment is not required "as long as [the court is] ensured that there [is] a basis for the damages specified in the default judgment."  <u>Fustok v. ContiCommodity Services, Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989) (whether a hearing is necessary is in the discretion of the district court); <u>see</u> <u>also</u> Fed. R. Civ. P. 55(b)(2) (the court may conduct such hearings or order such references as it deems necessary and proper in order to determine the amount of damages); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) allows but does not require the district judge to conduct a hearing).  A court may rely instead on detailed affidavits or documentary evidence.  <u>Fustok</u>, 873 F.2d at 40; <u>see</u> <u>also</u> <u>Tamarin v. Adam Caterers, Inc.</u>, 13 F.3d 51, 54 (2d Cir. 1993); <u>Action S.A.</u>, 951 F.2d at 508.  The moving party is entitled to all reasonable inferences from the evidence it offers.  <u>See</u> <u>Romanowicz</u>, 577 F.3d at 84; <u>Au Bon Pain</u>, 653 F.2d at 65 (citing <u>Trans World Airlines, Inc. v. Hughes</u>, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II.  <u>Liability</u>

Plaintiff brings claims under the FLSA alleging that defendants violated sections 206 and 207 of the statute and

claims under the New York Labor Law.

    A.    <u>FLSA claims</u>

The FLSA was enacted by Congress "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" <u>Barrentine v. Arkansas-Best Freight Sys. Inc.</u>, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (footnote omitted). Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce. 29 U.S.C. § 206(a)(1)(C). Section 207 requires employers to pay their employees at the rate of one and one-half of their regular rate for any hours worked over 40 in a workweek. <u>See</u> 29 U.S.C. § 207(a)(1). Employers in violation of this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." <u>Id.</u> § 216(b).

In addition, section 211(c) of the FLSA requires that covered employers "make, keep and preserve . . . records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time. <u>Id.</u> § 211(c). The information that must be kept in these records is set forth in 29 C.F.R. § 516.2(a)(1)-(12).[1] Section

---

[1] Such regulations "have the force of law, and are to be
(continued...)

215(a)(5) of the FLSA makes it unlawful for any employer covered under the statute to violate any of these record-keeping provisions.  See 29 U.S.C. § 215(a)(5).

     1.   Interstate Commerce Requirement

An employer is liable for wages under the FLSA if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.  29 U.S.C. §§ 203(r),(s), 207(a). Under the FLSA, an "enterprise" is an entity engaged in interstate commerce that has no less than $500,000 in annual gross volume of sales.  See 29 U.S.C. § 203(s).

Although plaintiff does not address the interstate commerce requirement in the complaint, in his affidavit, he states that he handled goods or materials moved in or produced for interstate commerce and gross sales were over $500,000.  Zurita Decl. (ct. doc. 33-6) at ¶¶ 7-9.  These allegations are sufficient to satisfy the interstate commerce requirement.  See Smith v. Nagai, 2012 WL 2421740, at *2 (S.D.N.Y. 2012) (finding that restaurant's purchase of food out of state satisfied interstate commerce requirement).  This Court notes that the courts in this Circuit have disagreed on the propriety of considering evidence beyond

---

[1](...continued)
given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute."  Freeman v. Nat'l Broadcasting Co., 80 F.3d 78, 82 (2d Cir. 1996) (citations omitted).

the allegations in a complaint in determining liability of
defendants sued under the FLSA.  Compare Ocasio v. Big Apple
Sanitation, Inc., 2015 WL 502226, at *2 (E.D.N.Y. 2015) ("the
Court will not consider [affidavits] in making its liability
determination on a motion for default judgment") with Mejia v.
East Manor USA Inc., 2013 WL 3023505, at *3 (E.D.N.Y. 2013)
(relying on allegation in memorandum of law that defendant's
sales exceeded $500,000) and Cao v. Chandara Corp., 2001 WL
34366628, at *4 (S.D.N.Y. 2001) (relying on affidavit in finding
liability under FLSA).

As a preliminary matter, this Court agrees with the view of
courts that the question of enterprise status is an issue that
goes to the merits of a plaintiff's claims rather than subject
matter jurisdiction.  See Monterossa v. Martinez Rest. Corp.,
2012 WL 3890212 at *2 -3 (S.D.N.Y. 2012) (not imposing burden on
plaintiff to establish enterprise status in denying summary
judgment motion) (collecting cases); Velez v. Vassallo, 203 F.
Supp. 2d 312, 333 (S.D.N.Y. 2002) (denying motion to vacate
default judgment) (citing Au Bon Pain, 653 F.2d at 65).  In any
event, as the Second Circuit recently noted in Bricklayers and
Allied Craftworkers Local 2 v. Moulton Masonry & Construction,
LLC, 779 F.3d 182 (2d Cir. 2015), a case brought under ERISA, 29
U.S.C. § 1001 et seq., a finding of liability under ERISA may be
based on "the factual allegations in the complaint, combined with
uncontroverted documentary evidence submitted by plaintiffs...."
Id. at 189 (emphasis added).  Indeed, it would be inefficient to

-9-

require plaintiff to file an amended complaint to add the additional allegations in his affidavit.  Due to defendant's default, plaintiff would not be required to serve upon defendants an amended complaint with these additional allegations.  See Fed. R. Civ. P. 5(a)(2).

     2.   Employer

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a).  Plaintiff has established that the defendants operated the pizzeria where plaintiff worked and that both defendants had control over the terms and conditions of plaintiff's employment.[2]  See Compl. at ¶¶ 18, 20-22; see also Zurita Decl. at ¶¶ 1-4.  Therefore, both the individual and corporate defendant are employers subject to FLSA liability.

     3.   Sufficiency of Allegations

Plaintiff alleges in his complaint that defendants did not pay him the proper minimum wage and overtime compensation.  Specifically, plaintiff alleges that he worked 119 hours[3] per

---

[2] Defendant Rodriguez is also listed as the Chairman or Chief Executive Officer of the corporate defendant on its certificate of incorporation.  See ct. doc. 33-2.

[3] The Complaint contains an apparent typographical error stating that plaintiff worked 5 hours per day from January 21, 2010 to April 14, 2010, rather than 17 hours per day as stated in plaintiff's declaration.  Compare Compl. at ¶ 17 ("[p]laintiff typically worked from approximately 7:00 a.m. to 12:00 p.m.) with Zurita Decl. at ¶ 10 ("I typically worked 7 days each week from approximately 7:00 a.m. to 12:00 a.m.)  This Court required
(continued...)

week at Bergen Pizza from January 21, 2010 to April 14, 2010 and

84 hours per week from April 14, 2010 through May 28, 2011, at

the rate of $350 per week regardless of the number of hours he

actually worked.  Compl. at ¶ 17; Zurita Decl. at

¶ 10.  These facts are sufficient to state a plausible claim

under the FLSA.

Based on the undisputed allegations in the complaint, I

recommend finding defendants liable for violation of the minimum

wage provisions and overtime provisions of the FLSA.

B.   New York Labor Law

New York's Labor Law is the state analogue to the federal

FLSA.  Although the Labor Law "does not require a plaintiff to

show either a nexus with interstate commerce or that the employer

has any minimum amount of annual sales," it otherwise mirrors the

FLSA in compensation provisions regarding minimum and overtime

wages.  Yin v. Kim, 2008 WL 906736, at *4 (E.D.N.Y. 2008); see

N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R.

& Regs. tit. 12, § 142-2.1(a)(1) (same); id. §142-2.2 (same

method as employed in the FLSA for calculating overtime wages).

One notable difference in New York law is a "spread of hours"

---

[3](...continued)
plaintiff to file supplemental submissions to clarify the
discrepancy, which he did.  See ct. docs. 35, 37 (Affirmation of
Leonor H. Coyle).  Unfortunately, the damages calculations
originally submitted by plaintiff (ct. doc. 33-7) and then re-
submitted in response to this Court's order requiring
supplemental submissions (ct. doc. 37-7), are based on the
apparently erroneous allegation in the Complaint.  This Court
will recommend damages based on the hours plaintiff claims to
have worked in his declaration.

provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

For the reasons discussed above, the allegations in the complaint are sufficient to impose liability on defendants under the Labor Law.  See Debejian v. Atl. Testing Labs., Ltd., 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).  Furthermore, the Court finds that plaintiff is entitled to recover "spread of hours" pay under the Labor Law based upon the undisputed allegations that he regularly worked over 10 hours per day but was not given an extra hour's worth of wages at minimum wage for those days.

III. Damages[4]

A.   Recoverable Damages

Under the FLSA, plaintiffs who prevail under section 206 and 207 are entitled to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  As discussed above, the New York Labor Law mirrors the

---

[4] Plaintiff has elected to seek the remedy of damages on his underlying claims instead of damages for breach of the settlement agreement.  See Abou-Khadra v. Mahshie, 4 F.3d 1071, 1078 (2d Cir. 1993).

FLSA in terms of compensating for minimum wage and overtime wage violations.  In addition to the liquidated damages that may be awarded under the FLSA, see 29 U.S.C. § 216(b), liquidated damages are available under New York law.  N.Y. Lab. Law § 663.

In calculating damages, this Court relies on the submissions of plaintiff and has not required a hearing.  The Second Circuit has expressly endorsed this approach so long as the court has "'ensured itself that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok, 873 F.2d at 40).  Plaintiff has submitted a sworn declaration containing information as to hours worked and rates of pay based on estimate and recollection.  Since the defendants have failed to dispute plaintiff's allegations, I find that plaintiff has provided a sufficient basis for determination of damages.

Generally, an employee-plaintiff under the FLSA "has the burden of proving that he performed work for which he was not properly compensated."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, et seq.  As the Supreme Court recognized in Anderson, "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  Id.

In addressing the problem of proof faced by employees, the Supreme Court in Anderson held that "an employee has carried out

his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. As courts have found, a plaintiff can meet this burden "by relying on recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011); Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009); Park v. Seoul Broad. Sys. Co., 2008 WL 619034, at *7 (S.D.N.Y. 2008); Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *24 (S.D.N.Y. 2007). "In the absence of rebuttal by defendants," Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998), or "[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct." Pavia v. Around the Clock Grocery, Inc., 2005 WL 4655383, at *5 (E.D.N.Y. 2005); see also Harold Levinson Assocs., Inc. v. Chao, 37 Fed. App'x 19, 20 (2d Cir. 2002). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." Anderson, 328 U.S. at 688.

New York law goes one step further and requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a; see Padilla, 643 F. Supp. 2d at 307. With this framework in mind,

the Court proceeds to its calculation of damages.

    B.   <u>Determination of Damages</u>

       1.   <u>Regular Hourly Rate</u>

In order to calculate damages, the court must first determine the "regular hourly rate" received by plaintiff.  <u>See</u> 29 U.S.C. § 207(a)(1).  Generally, the regular hourly rate "is determined by dividing the total renumeration in any workweek by the total number of hours actually worked . . . ."  29 C.F.R. § 778.109.

Plaintiff calculated the regular hourly rate based on the assumption that the weekly salary received by plaintiff compensated for all hours worked per week.  Thus, plaintiff's regular rate from January 21, 2010 to April 14, 2010 was $2.94 per hour ($350 per week/119 hours worked per week) and from April 15, 2010 to May 28, 2011 his hourly rate was $4.17 per hour ($350 per week/84 hours worked per week).[5]

_____

[5] As noted above, the complaint contains a typographical error as to the number of hours plaintiff worked from January 21, 2010 to April 14, 2010.  Under Rule 54(c), "[a] default judgment must not differ in kind from, or <u>exceed in amount</u>, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c) (emphasis added).  Obviously, the increased hours claimed in plaintiff's affidavit compared to those alleged in his complaint will result in a higher award of unpaid wages.  However, since plaintiff states in the body of the complaint and the damages clause that defendants are liable "in an amount to be determined at trial," rather than a specific dollar amount, defendants were on notice that the amount sought for unpaid wages would conform to the evidence adduced.  <u>See</u> <u>Glassman-Brown v. Pouring Wine, LLC</u>, 2015 WL 5853802, at *4 (S.D.N.Y. 2015) (recommending award of damages for pain and suffering even though not explicitly requested in complaint or prayer for relief); <u>see also</u> <u>Pauta v. Aena Mech. Corp.</u>, 2014 WL 3855025, at *2 (S.D.N.Y. 2014) ("[c]ourts may (continued...)

2.   <u>Minimum Wages</u>

Plaintiff is entitled to damages for having been paid less than the prevailing minimum wage throughout his term of employment.  An employee gets the benefit of the higher of the applicable federal or state minimum wage.  <u>See</u> 29 U.S.C. § 218(a); N.Y. Lab. Law § 652(1); <u>Galeana v. Lemongrass on Broadway Corp.</u>, --- F. Supp. 3d ---, 2014 WL 1364493, at *7 (S.D.N.Y. 2014).  During plaintiff's period of employment, the New York minimum wage was the same as the federal minimum wage – $7.25 per hour.  <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1; 29 U.S.C. § 206(a).

As previously discussed, I recommend that plaintiff's regular hourly rate be calculated by dividing his weekly salary by the hours he worked.  <u>See</u> 29 C.F.R. §§ 778.109, 778.113.  He is thus entitled to recover unpaid wages for the difference between the minimum wage rate in effect and the hourly rate he was actually paid for all hours worked.

From January 21, 2010 to April 14, 2010, plaintiff was paid an hourly rate of $2.94 for 119 hours per week.  For this 12 week period, plaintiff worked 1,428 hours (119 hours x 12 weeks).

---

[5](...continued)
award damages in the absence of an ad damnum clause articulating a sum certain, so long as those damages do not depart from the type of relief sought in the complaint).  In addition, if plaintiff had worked only five hours per day from January 21, 2010 to April 14, 2010 for $350 per week, there would have been no reason to include those facts in the complaint because it would not result in either minimum wage or overtime liability.  Therefore, defendants should have been on notice that there was a typographical error in the complaint.

Since the applicable minimum wage during this period was $7.25 per hour, plaintiff is entitled to unpaid minimum wages of $6,154.68 ($7.25-$2.94 x 1,428 hours).  From April 15, 2010 to May 28, 2011, plaintiff was paid an hourly rate of $4.17.  For this 58 week period, plaintiff worked 4,872 hours (84 hours x 58 weeks).  Thus, plaintiff is due unpaid minimum wages of $15,005.76 ($7.25-$4.17 x 4,872 hours).

In sum, I recommend awarding plaintiff $21,160.44 for total unpaid minimum wages.

### 3.   Overtime Wages

Plaintiff also seeks overtime wages since he was not paid time and one-half for those hours he worked over 40 hours during a given week, which includes each week during his term of employment.  Having already calculated the minimum wage due for each hour worked, I calculate one-half of the prevailing minimum wage as plaintiff's unpaid overtime wage for hours worked in excess of 40 hours in a week.  Thus, from January 1, 2010 to April 14, 2010, plaintiff is entitled to overtime pay for 79 hours per week.  For the entire 12 week period, this amounts to $286.38 per week ($7.25 per hour/2 x 79 hours per week) for a total of $3,436.56 in unpaid overtime wages ($286.38 per week x 12 weeks).  From April 15, 2010 to May 28, 2011, plaintiff is owed overtime pay for 44 hours per week.  For this 58 week period, plaintiff is due $159.50 per week ($7.25 per hour/2 x 44 hours per week) for a total of $9,251 in unpaid overtime wages ($159.50 per week x 58 weeks).

Therefore, I recommend awarding plaintiff $12,687.56 in total unpaid overtime wages.

4.   Spread of Hours Pay Under New York Labor Law

Plaintiff requests an award for "spread of hours" pay under New York Labor Law.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.18.  On those days when the interval between the beginning and end of an employee's workday exceeds 10 hours, New York law requires that the employee "receive one hour's pay at the basic minimum hourly wage rate."  Id. § 142-2.4; see, e.g., Pavia, 2005 WL 4655383, at *8 (awarding spread of hours pay).  Plaintiff regularly worked 12 or 17 hours per day for 7 days per week during his entire period of employment.  Plaintiff worked a total of 70 weeks, or 490 days, when the state minimum wage was $7.25 per hour.  Thus, plaintiff is entitled to spread of hours pay in the amount of $3,552.50 (490 days x $7.25).

5.   Liquidated Damages

Plaintiff seeks liquidated damages under only the FLSA. Although this Court has generally recommended awards of liquidated damages under both the FLSA and New York Labor Law, since district courts in this circuit are divided as to whether overlapping liquidated damages awards are available under the FLSA and the New York Labor Law,[6] I recommend awarding liquidated

---

[6] Compare Sanchez v. Viva Nail N.Y. Inc., 2014 WL 869914, at *5 (E.D.N.Y. 2014); Maliza v. 2001 MAR-OS Fashion, Inc., 2010 WL 502955, at *1 & n.4 (E.D.N.Y. 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) with Shiu v. New Peking Taste Inc., 2014 WL 652355, at *13 (E.D.N.Y. 2014); Gortat
(continued...)

damages only under the FLSA for unpaid minimum wages and overtime wages.

Section 216(b) of the FLSA provides that an employer shall be liable to the employees who are not paid minimum wages or overtime wages "an additional equal amount as liquidated damages" unless the employer can show that it acted in good faith.  29 U.S.C. § 216(b).  As the defendants here have defaulted, they have not shown they acted in good faith.  See, e.g., Blue v. Finest Guard Servs, Inc., 2010 WL 2927398, at *11 (E.D.N.Y. 2010) (finding that a defendant's default, in itself, may suffice to support a claim for liquidated damages); Dong v. CCW Fashion Inc., 2009 WL 884680, at *4-5 (S.D.N.Y. 2009).  Therefore, I recommend awarding plaintiff FLSA liquidated damages in the amount of $33,848.00 ($21,160.44 unpaid minimum wages + $12,687.56 unpaid overtime wages).

Plaintiff is also entitled to liquidated damages for spread of hours pay under New York law since it was pleaded in the complaint even though he has not requested such damages in his inquest submissions.  Similar to the FLSA, under the Labor Law, the burden is on the employer to prove a good faith basis to believe that its underpayment of wages was in compliance with the law to avoid imposition of liquidated damages.  See N.Y. Lab. Law § 663.  Liquidated damages are calculated at a 25% rate prior to April 9, 2011 and at a 100% rate of the underpayments thereafter.

---

[6](...continued)
v. Capala Bros., 949 F. Supp. 2d 374, 381-82 (E.D.N.Y. 2013).

See id.  Thus, plaintiff is entitled to liquidated damages under
the New York Labor Law for spread of hours pay in the amount of
$799.31 up to April 8, 2011 (25% of $3,197.25 ($50.75 per week x
63 weeks)) and $355.25 from April 9, 2011 to May 28, 2011 ($50.75
per week x 7 weeks).  Therefore, I recommend awarding liquidated
damages under the New York Labor Law in the amount of $1,154.56
($799.31 + 355.25).

In sum, the plaintiff is entitled to the following damages
under the FLSA and the New York Labor Law:[7]

| Minimum Wages | $ 21,160.44 |
| Overtime Wages | $ 12,687.56 |
| Spread of Hours Pay | $  3,552.50 |
| Liquidated Damages (FLSA) | $ 33,848.00 |
| Liquidated Damages (NY) | $  1,154.56 |
| **TOTAL DAMAGES** | $ 72,403.06 |

IV.  <u>Attorneys' Fees</u>

The FLSA allows for an award of "reasonable" attorney's
fees.  <u>See</u> 29 U.S.C. § 216(b).  Plaintiff bears the burden of
proving the reasonableness of the fees sought.  <u>See</u> <u>Savoie v.
Merchs. Bank</u>, 166 F.3d 456, 463 (2d Cir. 1999).

The standard method for determining the amount of reasonable
attorneys' fees is "the number of hours reasonably expended on
the litigation multiplied by a reasonable hourly rate," or a
"presumptively reasonable fee."  <u>Hensley v. Eckerhart</u>, 461 U.S.

_____

[7] Plaintiff has not requested prejudgment interest on his
New York Labor Law damages.

424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989); see also Perdue v. Kenny A., 559 U.S. 542, 551-53 (2010) (discussing lodestar methodology).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably

comparable skill, experience, and reputation." <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. <u>See</u> <u>Farbotko v. Clinton Cnty. of N.Y.</u>, 433 F.3d 204, 209 (2d Cir. 2005); <u>Chambless</u>, 885 F.2d at 1059.  The "community" is generally considered the district where the district court sits.  <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 190.

Plaintiff seeks $36,692.83 in attorney's fees for the work of four attorneys and various paralegals.  <u>See</u> ct. doc. 37-8 (billing statement).  In her sworn affirmation, Leonor Coyle lists the billing rates and explains the qualifications and experience of the attorneys and paralegals who worked on this case.  <u>See</u> Coyle Aff. at ¶¶ 26-31.

The vast majority of the time devoted to this case by plaintiff's counsel was spent by associates Leonor Coyle at the rate of $395 per hour and Izabela Gardocki at the rate of $250 per hour.  Ms. Coyle states that she is a 2006 law school graduate and she worked as an Assistant District Attorney for the Suffolk County District Attorney's Office prior to joining the law firm of Virginia & Ambinder, LLP.  Coyle Aff. at ¶ 26.  Ms. Coyle does not describe how long she has practiced employment litigation.  Ms. Gardocki graduated from law school in 2011 and left Virgina & Am binder in early 2013.  <u>Id.</u> at ¶ 29.

"[T]he nature of representation and type of work involved in

a case are critical ingredients in determining the 'reasonable'
hourly rate." Arbor Hill, 522 F.3d at 184 n.2 (citations
omitted).  The nature of the work performed in this matter was
relatively straightforward and no novel or complex issues were
raised by plaintiff.  Yet, counsel made critical mistakes in
drafting the complaint and inquest submissions that adversely
affect their client.  As discussed, the allegations in the
complaint significantly reduce the number of hours plaintiff
attests that he worked from January 21, 2010 to April 14, 2010.
Counsel compounded the error by calculating damages based on the
allegations in the complaint even after the Court identified the
discrepancy for counsel.  See ct. docs. 35, 37-7.  In addition,
counsel failed to request liquidated damages and prejudgment
interest on the New York Labor Law claims and failed to raise
claims under the New York Wage Theft Prevention Act,[8] N.Y. Labor
Law § 198(1-b), (1-d).

The rates claimed are also too high compared to the rates
received by similarly experienced attorneys in this district.  In
FLSA cases, reasonable hourly rates awarded for the work of

---

[8] The New York Wage Theft Prevention Act amended the New
York Labor Law to provide that an employee who is not provided an
annual notice of, inter alia, the rate of pay, overtime rate and
the regular pay date is entitled to damages of $50 per week up to
$2,500.  See N.Y. Labor Law § 198(1-b).  In addition, an employee
who is not provided a statement of wages for each work week is
entitled to damages of $100 per week up to $2,500.  See id. §
198(1-d).  In his declaration, plaintiff states that he "did not
receive any paystubs that broke down the hours that I worked.  In
fact, Defendants did not even record the hours that I worked."
Zurita Decl. at ¶ 12.

senior associates ranges from $200 to $300 and for junior associates, $100 to $150.  Herenandez v. NJK Contractors, Inc., 2015 WL 5178119, at *4 (E.D.N.Y. 2015); Luo v. L & S Acupuncture, P.C., 2015 WL 1954468, at *2 (E.D.N.Y. 2015); see e.g., Gonzales v. Gan Israel Pre Sch., 2014 WL 1011070, at *19 (E.D.N.Y. 2014) (recommending award at rate of $275 per hour for Ms. Coyle); Jaramillo v. Banana King Rest. Corp., 2014 WL 2993450, at *9 (E.D.N.Y. 2014) (reducing rate of associate practicing since 2010 to $200 per hour); Jean v. Auto and Tire Spot Corp., 2013 WL 2322834, at *7 (E.D.N.Y. 2013) (awarding $175 per hour for associate admitted to practice in 2011); Duncan v. Revma Electric, Inc., 2013 WL 4899531, at *3 (E.D.N.Y. 2013) (awarding $100 per hour for attorney who had practiced for 4 years); Huerta v. Victoria Bakery, 2012 WL 1100647, at *15 (E.D.N.Y. 2012) (recommending award at $125 per hour for Ms. Coyle in the absence of any information about the nature of her experience); Janus v. Regalis Const., Inc., 2012 WL 3878113, at *13 (E.D.N.Y. 2012) (recommending award of $200 per hour for associates who graduated in 2008 and 2011, respectively).  Under the circumstances, I recommend awarding fees at the rates of $250 per hour for Ms. Coyle and $150 per hour for Ms. Gardocki.

Plaintiff claims that two partners also performed work on this case.  One of those partners, Lloyd Am binder, is not discussed in Ms. Coyle's affirmation.  The reason Ms. Coyle omitted any mention of Mr. Am binder in her affirmation is because he likely did not work on this case.  The sole billing

entry related to Mr. Am binder is for January 14, 2015 and
states, "reviewed D's motion, reviewed P.'s proposed opposition."
Ct. doc. 37-8 at 12.   However, defendants did not file any motion
in this case other than counsel for defendant's motion to
withdraw filed on April 30, 2013.   Therefore, I recommend denying
plaintiff's request for fees for the work of Mr. Am binder.

The other partner for which plaintiff claims fees is LaDonna
Lusher at the rate of $425 per hour, who billed 3.2 hours for
preparing for and appearing at two court conferences, one of
which was conducted by telephone, and the other of which
defendant failed to appear.   See ct. doc. 37-8 at 9, 10; minute
entries dated 8/7/13 and 10/8/13.   The telephone conference held
on August 7, 2013 lasted 9 minutes according to the Court's
minute entry.   Yet, Ms. Lusher billed 1.2 hours, including
preparing for the conference and "debrief[ing]" Ms. Coyle after
the conference.   Ms. Lusher billed 2 hours to prepare for, attend
and debrief Ms. Coyle regarding the in-person conference
scheduled for October 8, 2013, at which the defendants failed to
appear.   Given the nature of such work, I recommend awarding fees
for Ms. Lusher at the recommended rate for Ms. Coyle of $250 per
hour.

Plaintiff seeks fees at the rates of $125 to $150 per hour
for the work of 8 paralegals.[9]   However, these rates are higher

---

[9] Ms. Coyle does not discuss Michelle Moreno, who is billed
at the rate of $150 per hour.   In the absence of any information,
the Court will assume that Ms. Moreno performed paralegal work.

than those generally awarded in this district for paralegals.
Accordingly, I recommend that the paralegal billing rates be
reduced to $90 per hour.  See Ferrara v. All American Trucking
Servs., Inc., 2012 WL 1042936, at *6-*7 (E.D.N.Y. 2012); Ferrara
v. PI Trucking, 2011 WL 7091562, at *4 (E.D.N.Y. 2011).

Plaintiff's fee request is based on 120.97 hours spent
litigating this case, not including the time attributed to Mr. Am
binder, which I recommend disallowing.  Although this would be an
excessive amount of time for a garden variety default case,
defendants appeared through counsel and participated in some
discovery.  In addition, some of the time spent by counsel was
for attending conferences that defendants failed to appear for or
in connection with negotiating and drafting settlement agreements
that were not fulfilled.

On the other hand, the billing records submitted reflect
some degree of duplication among counsel.  For example, Ms. Coyle
billed 3.5 hours for reviewing the file, reviewing the script
prepared by Ms. Gardocki, and attending Mr. Rodriguez's
deposition, even though the questioning was performed by Ms.
Gardocki.  See billing entry for 1/28/03.  In addition, Ms. Coyle
and Ms. Gardocki both billed for many conferences between them.
See, e.g., billing entries for 10/17/12, 12/10/12, 12/11/12,
1/28/13, 1/29/13, 1/30/13, 1/31/13, 2/7/13, etc.  Thus, I
recommend reducing plaintiffs' request for attorneys' fees by
10%.  See Green v. City of N.Y., 403 Fed. Appx. 626, 630 (2d Cir.
2010) (affirming across the board reduction in hours); Luciano v.

-26-

Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  This is an
efficient method of addressing the problems with counsel's
entries rather than "'making minute adjustments to individual
time entries.'"  See Maldonado v. La Nueva Rampa, Inc., 2012 WL
1669341, at *14 (S.D.N.Y. 2012) (quoting Chan v. Sung Yue Tung
Corp., 2007 WL 1373118, at *5 (S.D.N.Y. 2007)); see also Lunday
v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (court not
required to "set forth item-by-item findings concerning what may
be countless objections to individual billing items").

Accordingly, I recommend awarding attorneys' fees in the
amount of $20,230.47 as follows:

| | Hourly Rate | Hours Spent | Total |
|---|---|---|---|
| L. Coyle | $250 | 59.10 | $14,775.00 |
| I. Gardocki | $150 | 30.20 | $4,530.00 |
| L. Lusher | $250 | 3.20 | $800.00 |
| M. Nadgorska | $90 | 1.30 | $117.00 |
| C. Isnardi | $90 | 2.00 | $180.00 |
| I. Cruz | $90 | 6.17 | $555.30 |
| I. Ner | $90 | 0.40 | $36.00 |
| M. Moreno | $90 | 1.60 | $144.00 |
| V. Velez | $90 | 7.90 | $711.00 |
| K. Maleszynska | $90 | 7.00 | $630.00 |
| Subtotal | | | $22,478.30 |
| | | | (10%) |
| Total | | | **$20,230.47** |

V.   <u>Costs</u>

Plaintiffs further request an award of $875.68 for costs incurred during the course of this litigation, which includes service of process fees, translation fees and transcript fees, but curiously does not include the court filing fee.  <u>See</u> ct. doc. 37-8.  As a general matter, a prevailing plaintiff in an action under the FLSA is entitled to recover costs from the defendant.  <u>See</u> 29 U.S.C. § 216(b).  However, only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable.  <u>Moon v. Kwon</u>, 2002 WL 31512816, at *30-*31 (S.D.N.Y. 2002) (quoting <u>Kuzma v. IRS</u>, 821 F.2d 930, 933-34 (2d Cir. 1987)).  The costs claimed by plaintiff are routinely recoverable.  Thus, I recommend awarding plaintiffs costs in the amount requested.

VI.   <u>Offset</u>

Since defendants paid seven installments of $1,000 each pursuant to the parties' settlement agreement (ct. doc. 24 at 1), they are entitled to a credit of that amount against any judgment obtained against them.  Therefore, I respectfully recommend applying an offset in the amount of $7,000.

<u>CONCLUSION</u>

I therefore recommend that the Court award plaintiff default judgment against Bergen Pizza Incorporated and Constantino Moyao Rodriguez in the amount of $86,509.21, including minimum wages of $21,160.44, overtime wages of $12,687.56, spread of hours pay of

$3,552.50, liquidated damages under the FLSA of $33,848.00, liquidated damages under the New York Labor Law of $1,154.56, attorneys' fees of $20,230.47 and costs of $875.68, less $7,000 paid towards the settlement.

This report and recommendation will be filed electronically and a copies mailed to defendants on this date. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the Honorable Kiyo A. Matsumoto by March 18, 2016. Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 1, 2016

                          /s/
                          MARILYN D. GO
                          UNITED STATES MAGISTRATE JUDGE